UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN TREMPER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>FCA US LLC,<br><br>    Defendant. | Case No. 20-cv-00828-HSG<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND**<br><br>Re: Dkt. No. 21 |

Pending before the Court is Plaintiffs' motion to remand. *See* Dkt. No. 21. For the reasons noted below, the Court **GRANTS** Plaintiffs' motion to remand the case to Monterey County Superior Court.

## I. BACKGROUND

On January 3, 2020, Stephen Tremper and Heather Tremper ("Plaintiffs") filed this action against Defendant FCA US LLC in the Monterey County Superior Court. Dkt. No. 1-1. Plaintiffs subsequently filed a First Amended Complaint ("FAC") on January 23, 2020. *Id.* at 33–51. According to Plaintiffs, California Civil Code § 1795.6(a)(1) requires a vehicle warranty "be extended for the number of days a vehicle is [at] an authorized repair facility for repairs or service." FAC ¶ 21. Plaintiffs allege that despite this requirement, Defendant "systematically denie[d] warranty coverage for vehicles when the warranty is still in effect by only considering the days from when the vehicles were purchased and not excluding the days the vehicles were at an authorized FCA facility for repairs." *Id.* at ¶ 27. Thus, Plaintiffs bring the following claims: breach of express warranty (Count I); violation of the California Consumer Legal Remedies Act ("CLRA") Civil Code § 1750 *et seq.* (Count II); violation of the Unfair Competition Law ("UCL") Cal. Business & Professions Code § 17200 et seq. (Count III); and restitution, money had and received, unjust enrichment, and/or quasi-contract and assumpsit (Count IV). *See id.* at ¶¶ 30-72.

Plaintiffs seek to bring their claims on behalf of "[a]ll persons who are residents of California that purchased or leased one or more vehicles warranted by [Defendant] in the State of California (which will be a Fiat, Jeep, Alfa Romeo, Dodge, RAM, Maserati, or Chrysler vehicle), and who were denied warranty coverage in the last four years because the warranty time period had not been extended for the days the vehicle was under repair or service at an FCA authorized repair facility." *Id.* ¶ 7.

Defendant removed the case to federal court on February 4, 2020, claiming that this Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). On March 5, 2020, Plaintiffs filed a motion to remand, for which briefing is complete. Dkt. Nos. 21 ("Remand Mot."), 32 ("Remand Opp."), and 34 ("Remand Reply"). On March 9, 2020, Defendant filed a motion for dismiss Plaintiffs' FAC. Dkt. Nos. 22, 31, and 33.[1]

## II. LEGAL STANDARDS

### A. Removal Jurisdiction

A defendant may remove any civil action to federal court where the district court would have original jurisdiction over the action. 28 U.S.C. § 1441; *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To do so, a party seeking removal must file a notice of removal within 30 days of receiving the initial pleading or within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3). The notice must contain a "short and plain statement of the grounds for removal." *Id.* § 1446(a); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

The removing party bears the burden of establishing removal jurisdiction. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683–85 (9th Cir. 2006). A plaintiff may seek to remand a case to the state court from which it was removed if the district court lacks jurisdiction or if there was a defect in the removal procedure. 28 U.S.C. § 1447(c).

---

[1] The Court finds this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 16-5.

### B. Class Action Fairness Act

CAFA vests district courts with original jurisdiction over civil actions in which the amount in controversy exceeds $5 million, there is minimal diversity of citizenship between the parties, and the action involves at least 100 class members. 28 U.S.C. § 1332(d). Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." 28 U.S.C. § 1332(d)(6).

## III. ANALYSIS

Plaintiffs argue that Defendant fails to meet its burden of establishing CAFA jurisdiction. Specifically, Plaintiffs argue that Defendant fails to establish the amount in controversy requirement primarily because it relies on the untenable assumption that every purchaser or lessee "is asserting a claim for damages." Remand Mot. 4, 6. In its Notice of Removal, Defendant relied on the following assumptions to show that the amount in controversy exceeded $5 million:

> 8. There have been more than 871,000 sales and/or leases of FCA US's vehicles in California since 2012.
> 9. According to publicly available reports, all the vehicles sampled, including vehicles manufactured by FCA US, average at least one reported problem that could result in a warranty repair during the first three years of ownership.
> 10. The daily value of a warranty providing coverage like that provided by FCA US's Basic Limited Warranty is $4.85 per day when calculated based on the cost of such a warranty.

Dkt. No. 1 at ¶¶ 8–10 (citations omitted). In its Opposition, Defendant updated these calculations "to include vehicle purchases as early as 2008 and only through January 2, 2019 (one year before this case was filed)," because a "purchaser of a vehicle in 2008 could have still had the 8 year/80,000 mile emissions warranty in effect as late as 2016." Remand Opp. at 4 n.3. Similarly, "vehicles sold [until January 2, 2019] would have had at least one warranty which had expired by the time this case was filed since the brake warranty lasts only 12 months." *Id.* This updated calculation then estimates at least 1,652,077 sales or leases of FCA vehicles in California within the time period, and calculates the amount in controversy as $8,012,573.45. *Id.* at 8 (calculating the amount in controversy as follows: "each vehicle (1,652,077) undergoing the lowest average of warranty repairs in the industry (1) multiplied by the cost per day of warranty coverage ($4.85), *i.e.*, 1,652,077 x 1 x $4.85 = $8,012,573.45."). To support its calculation, Defendant provides a

3

declaration from Lawrence Brookes, Head of Product Analysis and Regulatory Process at FCA US.  *See* Dkt. No. 32-1.

### A. Amount in Controversy Requirement

When evaluating the amount in controversy, the Court must determine whether it is "more likely than not" that the amount in controversy exceeds $5 million.  *See Bryan v. Wal-Mart Stores, Inc.*, No. C 08-5221 SI, 2009 WL 440485, at *2 (N.D. Cal. Feb. 23, 2009).  The Court must assume the truth of the allegations in the complaint and that a jury will return a verdict for the plaintiff on all the alleged claims.  *Id.*

A defendant may not establish federal jurisdiction "by mere speculation and conjecture, [or] with unreasonable assumptions."  *Ibarra*, 775 F.3d at 1197–98.  Instead it must rely on "real evidence and the reality of what is at stake in the litigation."  *Id.*  Nevertheless, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  Courts have found that declarations or affidavits may be sufficient to satisfy this burden.  *See, e.g.*, *Lewis v. Verizon*, 627 F.3d 395, 397 (9th Cir. 2010) (finding an affidavit showing that "potential damages could exceed the jurisdictional amount" sufficient to satisfy the removing defendant's burden).  A defendant is only required to submit evidence establishing the amount in controversy "when the plaintiff contests, or the court questions, the defendant's allegation."  *Dart Cherokee*, 135 S. Ct. at 554.  The Ninth Circuit has not determined whether the plaintiff must also submit evidence, and instead has held that the district court should "set a reasonable procedure . . . so that each side has a fair opportunity to submit proof."  *Ibarra*, 775 F.3d at 1199–1200.

As noted above, Plaintiffs argue that Defendant relied on an unreasonable assumption "that every person who purchased one of the subject vehicles . . . was denied warranty coverage because the time period of the applicable warranty had not been extended as required under California law."  Remand Mot. at 4.  Plaintiffs argue that this assumption is unreasonable, given that there are likely purchasers or lessees who made no claim during the extended period.  Remand Reply at 3.

4

The Court agrees with Plaintiffs that Defendant's assumption is unreasonable. Plaintiffs precisely define the prospective class members in the FAC. Proposed class members include purchasers or lessees in California whose claims for repairs to be covered under a warranty were denied due to Defendant's failure to extend their warranty periods by the days that the car previously had been in the shop for warranty repairs. *See* FAC at ¶ 7. As Plaintiffs note, "[i]f Plaintiffs had wanted every purchaser or lessee in the class they would have said so," and would not have included the limitation that class members must also have been denied warranty coverage based on a failure to extend the warranty as required by California law. *Id.*

Defendant argues that "Plaintiffs did not even attempt to limit the class so that only those who actually presented their vehicles for a repair during an extended warranty period are included in it, let alone actually limit it to those who presented and were denied coverage." Remand Opp. at 9. This position is untenable, as it is simply inconsistent with the face of the complaint. Plaintiffs' class definition only applies to purchasers of lessees in California "who were denied warranty coverage . . . because the warranty time period had not been extended for the days the vehicle was under repair or service at an FCA authorized repair facility." FAC at ¶ 7. One's warranty coverage can only be denied if the vehicle was presented for service or repair. The class definition need not specifically state that class members presented the vehicle: that condition is plainly inherent in the requirement of a "denial". Moreover, the FAC makes explicit that class members must have presented their vehicles for repair:

> "In accordance with Defendants' written warranty and within the warranty period, Plaintiff and members of the Class *delivered their vehicles to Defendant FCA's representative to perform warranty repairs.* However, Defendants and/or Defendants' representative refused to repair and/or diagnose the vehicles without charge and under warranty, breaching the terms of the written warranty on each occasion. . . ."

*Id.* at ¶ 34 (emphasis added).

Nor do Plaintiffs' allegations that Defendant "systematically" denied coverage because the warranty period was not extended for repair time make Defendant's assumptions reasonable. *See* Remand Opp. at 9–10. Unlike in *Mejia v. DHL Express (USA) Inc.*, 15-CV-890-GHK (JCx) 2015 WL 2452755, *4 (C.D. Cal. 2015), cited by Defendant, Plaintiffs here do not allege that Defendant

always denied warranty coverage. Instead, Plaintiffs seek to represent a class of only those vehicle purchasers or lessees whose warranty claims were denied during the narrow window when the "time period had not been extended for the days the vehicle was under repair or service." FAC at ¶ 7. Defendant's interpretation assumes not only that every car sold or leased was brought in for a warranty repair, but also that all repairs were sought after warranty periods had ended, and that each one was denied. Then it assigns a value for each denial equal to one day's cost of Defendant's limited warranty plan. These assumptions ignore what is alleged in the FAC. Generally, "[a]n assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). "When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy . . . if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F. 3d at 1197. Here, Defendant's estimate of the damages in controversy disregards the clear limitations in the FAC, making it unreasonable.

Defendant's remaining amount in controversy estimates, based on the claimed vehicle value and the cost of additional repairs, fare no better. *See* Remand Opp. at 11–14. Again, use of the 1.6 million vehicle purchaser or lessee figure relies on the unreasonable assumption that all purchasers were denied warranty coverage for the specified reason during the extended warranty period. Next, Defendant provides no basis for using the claimed value of Plaintiffs' vehicle as a measure of damages. The Amended Complaint mentions the replacement of the vehicle, but only as background for Plaintiffs' breach of warranty claim. Specifically, Plaintiffs allege "Defendants have failed to offer to repair or replace the Vehicle or the vehicles of other Class members, breaching the terms of the written warranty." FAC at ¶ 34. They do not seek the claimed vehicle value, and there is no logical connection between this figure and potential class damages. Similarly, Defendant fails to show that its calculation of the cost of additional repairs is a reasonable basis for estimating the amount in controversy. Even using Plaintiffs' $8,000 repair

6

figure, Defendant provides no basis to assume that there are at least 624 other class members who were denied warranty coverage because of Defendant's failure to extend the time period for the days vehicles were under repair.

Additionally, Defendant's "goodwill" payments cannot serve as an estimated proxy for the amount in controversy. *See* Remand Opp. at 4–5. The "goodwill" program is a discretionary program offered by the dealership to provide repairs paid for by FCA US even though the warranty has expired. Defendant offers these payments as some sort of estimate of class damages, but its suggestion that the aggregate expenditure of over $39 million for "goodwill" payments in California since 2016 is probative of the likely losses suffered by class members is a non-sequitur. Without any evidence as to how the size of the "goodwill recipient" group compares to the size of the putative class, or even any articulation of how the likely smaller number of putative class members could reasonably be estimated, the aggregate "goodwill" figure sheds no light on whether the putative class' reasonably estimated damages likely exceed $5 million. Accordingly, Defendant fails to show that the "goodwill" program provides a basis for reasonably estimating the amount in controversy in this case.

Finally, while the Court agrees that punitive damages and attorneys' fees may be considered to show that the amount in controversy meets the $5 million requirement, these figures alone do not get Defendant there. Even if the Court were to use Defendant's 10:1 or 12:1 punitive damages estimate or 25% attorneys' fees estimate, the Court has no reasonable estimate of actual damages upon which to base such calculations. Nor can the Court borrow estimates from other cases to substantiate these amounts. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 796 (9th Cir. 2018) ("the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation."). Defendant must still show that its estimates are reasonable in this case by a preponderance of the evidence, and it has not done so.[2]

---

[2] Defendant argues that the Court should deny Plaintiffs' motion to remand because Plaintiffs fail to offer any way to measure the amount in controversy to show that it is less than $5 million.

7

### B. Attorney's Fees

Lastly, Plaintiffs request attorney's fees for Defendant's removal under 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court cannot say that Defendant lacked an objectively reasonable basis for seeking removal. Instead, Defendant failed to meet its burden to put forth reasonable assumptions and establish the amount in controversy requirement by a preponderance of the evidence. *See Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) ("[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted."). Accordingly, the Court **DENIES** Plaintiffs' request for attorney's fees.

## IV. CONCLUSION

For the reasons noted above, the Court **GRANTS** Plaintiffs' motion to remand finding that Defendant has failed to meet its burden to show removal was proper under CAFA. The Court further **DENIES** Plaintiff's request for attorney's fees due to removal. The Clerk is **DIRECTED** to terminate without prejudice Defendant's motion to dismiss, *see* Dkt. No. 22, and to remand this case to Monterey County Superior Court.

**IT IS SO ORDERED.**

Dated: 6/4/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

Remand Opp. at 18 (citing *Navarro v. Servisair, LLC*, 08-cv-02716-MHP, 2008 WL 3842984, at *9 (N.D. Cal. 2008)). The principle that a plaintiff "cannot simply sit silent and take refuge in the fact that it is Defendant's burden to establish the grounds for federal jurisdiction" is typically cited in cases where a plaintiff uniquely holds the knowledge regarding the alleged frequency of violations. *See Patel v. Nike Retail Servs.*, Inc., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (involving a labor class action where plaintiff would know the frequency of labor violations alleged to enable amount in controversy calculations); *Navarro*, 2008 WL 3842984, at *9 (same). Unlike labor class actions, here it is Defendant who has (or should have) the relevant information about purchasers or lessees who were denied warranty coverage, and why.